# In the United States Court of Federal Claims

BID PROTEST
No. 17-277C (Filed: July 11, 2017)

|  |  |
|---|---|
| CLEVELAND ASSETS, LLC, ) ) ) Plaintiff, ) ) v. ) ) THE UNITED STATES OF AMERICA, ) ) Defendant. ) ) | Keywords: Bid Protest; General Services Administration; Request for Lease Proposal; Stay Pending Appeal; RCFC 62(c). |

*Robert C. MacKichan, Jr.*, Holland & Knight LLP, Washington, DC, for Plaintiff. *Mary Beth Bosco*, *Steven D. Gordon*, and *Gordon Griffin*, Holland & Knight LLP, Washington, DC, with whom were *Elizabeth Jochum*, Holland & Knight LLP, Tysons, VA, and *Daniel Hanlon*, Holland & Knight LLP, Miami, FL, Of Counsel.

*Kara M. Westercamp*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant, with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General. *Thomas Hawkins*, Regional Counsel, General Services Administration, Chicago, IL, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

This is a pre-award bid protest case. On May 22, 2017, the Court denied Plaintiff Cleveland Assets, LLC's (Cleveland Assets) motion for judgment on the administrative record. Opinion and Order, ECF No. 35 (hereinafter "Opinion and Order Denying MJAR"). Cleveland Assets appealed the Court's decision, ECF No. 37, and has now filed a motion to stay the Court's decision pending the outcome of the appeal and enjoin the agency from conducting discussions, evaluating offers, or making an award in the interim, ECF No. 43. For the reasons discussed below, Cleveland Assets's motion is **DENIED**.

## BACKGROUND

The relevant facts are set forth in detail in the Court's May 22, 2017 Opinion and Order. See Opinion and Order Denying MJAR at 2–9. To briefly summarize: the General Services Administration (GSA) currently leases a building from Cleveland Assets in downtown Cleveland, Ohio, which houses the Federal Bureau of Investigation's (FBI) Cleveland Field

Office. Id. at 2. The lease was originally set to expire in January 2012, but has been extended through January 31, 2018. Id. The lease covers 121,912 rentable square feet of building space. Id.

Pursuant to 40 U.S.C. § 3307 (and the Anti-Deficiency Act, 31 U.S.C. § 1341), GSA must obtain congressional approval before obligating funds on a lease whose annual rent exceeds $2.85 million. Id. at 2–3 & n.1. "To secure consideration for the approval," GSA must submit to two congressional committees a prospectus describing the proposed facility. 40 U.S.C. § 3307(b). The prospectus must include specific information about the facility, including (among other things) "a brief description of the . . . space to be leased" and "an estimate of the maximum cost to the Government of the . . . space to be leased." Id.

In 2010, in anticipation of the lease's original expiration, GSA submitted a prospectus to Congress describing the attributes of the new facility it intended to lease and setting a maximum rental rate of $26 per rentable square foot per year (hereinafter the "$26 rental cap"), with an escalation clause to account for inflation. Opinion and Order Denying MJAR at 5. GSA arrived at this figure based on extensive market surveys and in collaboration with the Office of Management and Budget. See id. at 3–5. The relevant congressional committees approved the prospectus in 2011. Id. at 6.

According to Cleveland Assets, after receiving congressional approval, GSA issued a first request for lease proposals (RLP) for the FBI building on December 6, 2013. Id. at 7 n.7. Following a protest by Cleveland Assets, GSA issued an amended RLP, which it later cancelled. Id. On December 7, 2016, GSA released the RLP at issue in this case. Id. at 7. GSA noted that the RLP was "subject to an approved Prospectus issued in accordance with 40 USC § 3307" and that GSA would "only award a lease pursuant to th[e] RLP if the offered rental rate does not exceed the Congressionally-imposed rent limitation" of $26 per square foot per year. Id. at 7 (quoting Admin. R. Tab 8 at 70). According to Cleveland Assets, however, the RLP specifies that the leased premises must include space and structures that were not identified in the prospectus, including a visitor screening facility, an automobile annex, and a concrete foundation for a hazardous materials container. Id. at 11 & n.11.

Responsive offers were due on February 28, 2017. Id. at 8. Five days before offers were due, on February 23, 2017, GSA prepared an updated analysis of the $26 rental cap and an updated analysis of prevailing rental rates in downtown Cleveland. Id. These analyses produced rates that were not inconsistent with the $26 rental cap. See id.

Cleveland Assets then filed its bid protest on February 28, 2017, the day proposals were due. Id.; see also Compl., ECF No. 1. As relevant here, it alleged that the $26 rental cap was unreasonably low, making it impossible to both comply with the cap and meet the RLP's requirements, Compl. at 10, and that the RLP unlawfully exceeded the scope of the congressionally-approved prospectus because it included space and structures that had not been listed in the prospectus, id. at 9–10.[1] The government compiled an administrative record, and

---

[1] Cleveland Assets apparently is not appealing the Court's dismissal of its other claims, which concerned allegations that GSA held improper discussions. See Docketing Statement at 4,

2

Cleveland Assets and the government filed cross-motions for judgment on the administrative record. See Opinion and Order Denying MJAR at 8–9.

On May 22, 2017, for reasons discussed in more detail below, the Court denied Cleveland Assets's motion for judgment on the administrative record and granted the government's cross-motion for judgment on the administrative record. Id. at 20. The Court concluded that Cleveland Assets lacked standing to bring its claim that the RLP exceeded the scope of the prospectus because that claim did not fall within the zone of interests protected by 40 U.S.C. § 3307. Id. at 11–14. And, it determined that Cleveland Assets's challenge to the rental cap lacked merit. Id. at 17–20.

Cleveland Assets filed its notice of appeal three days later, on May 25, 2017. ECF No. 37. It then filed its motion to stay the Court's decision and enjoin GSA from proceeding with the procurement on June 8, 2017. ECF No. 43. The motion has been fully briefed, and oral argument is not necessary to resolve the motion.

**DISCUSSION**

**I.    Legal Standard**

Rule 62(c) of the Rules of the Court of Federal Claims provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." It is well established that an injunction pending appeal is an "extraordinary" remedy. E.g., Telos Corp. v. United States, 129 Fed. Cl. 573, 575 (2016) (quotation omitted); Algese 2 s.c.a.r.l. v. United States, 128 Fed. Cl. 7, 9 (2016); see also Nken v. Holder, 556 U.S. 418, 428 (2009).

To determine whether to provide this extraordinary relief, the court must "assess[] the movant's chances for success on appeal and weigh[] the equities as they affect the parties and the public." Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897 F.2d 511, 513 (Fed. Cir. 1990) (quoting E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987)). This assessment involves the "flexible" consideration of four familiar factors: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will likely suffer irreparable harm absent an injunction; (3) whether the injunction would substantially injure other interested parties; and (4) whether the public interest would be served by the injunction. Telos Corp., 129 Fed. Cl. at 575 (citing Standard Havens, 897 F.2d at 512); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

"[T]he . . . factors contemplate individualized judgments in each case, [and] the formula cannot be reduced to a set of rigid rules." Hilton v. Braunskill, 481 U.S. 770, 777 (1987). The court's flexibility, however, is not unlimited; at the very least, the movant must demonstrate a "substantial case on the merits," with the other factors "tilt[ing] decidedly toward" the movant.

---

Cleveland Assets, LLC v. United States, No. 17-2113 (Fed. Cir. June 29, 2017), ECF No. 12; see also Opinion and Order Denying MJAR at 10–11.

3

E.g., Telos Corp., 129 Fed. Cl. at 575 (quotations omitted); see also Standard Havens, 897 F.2d at 513.

## II. Application to This Case

The Court concludes that in this case, the factors all weigh against issuing the injunction Cleveland Assets seeks. First, the Court has already ruled against Cleveland Assets on the merits; thus, the Court has already, in effect, determined that Cleveland Assets is not likely to succeed on the merits before the Federal Circuit. See Telos Corp., 129 Fed. Cl. at 575.

Further, the Court is not persuaded that Cleveland Assets has demonstrated a substantial case on the merits as to either of its grounds for appeal. Cleveland Assets faces a particularly difficult challenge when it comes to the Court's conclusion that GSA's selection of the $26 rental cap was not unreasonable. As Cleveland Assets acknowledges, the Court reviews an agency decision like this one only to determine if "the agency . . . examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); see Pl.'s Mot. for Stay Pending Appeal (Pl.'s Mot.) at 5–6. Under this "highly deferential" standard of review, the "reviewing court [must] sustain an agency action evincing rational reasoning and consideration of relevant factors," Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citation omitted); it may not substitute its judgment for that of the agency, Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

In denying Cleveland Assets's motion for judgment on the administrative record, the Court concluded that "at each stage of the procurement process, GSA took reasonable steps to determine the appropriate rental cap rate." Opinion and Order Denying MJAR at 17. In particular, the Court noted that "[w]hile the surveys, appraisal, and other documents" in the record "yielded a variety of possible rental rates, there [we]re several documents in the record which reflect[ed] and provide[d] support for GSA's ultimate conclusion that it could secure adequate space for the FBI in the Cleveland business district (on a 'turnkey' basis) for a rate of $26 per square foot or less." Id.

Cleveland Assets now asserts that it has a substantial case on the merits because more of these documents support a rate higher than $26 per rentable square foot than support that rate or a lower rate, and because some of the documents supporting a lower rate post-date the issuance of the RLP. See Pl.'s Mot. at 6–10. These assertions do not show that GSA failed to examine the relevant data or consider the relevant factors; rather, they go to the weight that GSA accorded to the different documents—a determination that the reviewing court does not second-guess. Cleveland Assets thus has not demonstrated that it has a substantial case on the merits with respect to this ground for its appeal.

The Court also concludes that Cleveland Assets has not demonstrated a substantial case on the merits with respect to its claim under 40 U.S.C. § 3307. The Court held that under Supreme Court precedent, Cleveland Assets lacked standing to bring that claim because it fell outside the zone of interests protected by § 3307, and Congress had not expressly negated the zone of interests test in bid protest cases in the Court of Federal Claims. See Opinion and Order Denying MJAR at 11–14. Cleveland Assets's argument to the contrary relies heavily on a case,

4

C.A.C.I., Inc.-Federal v. United States, 719 F.2d 1567 (Fed. Cir. 1983), that predates the court's modern, statutory grant of jurisdiction over bid protests. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1331–33 (Fed. Cir. 2001) (discussing the development of bid protest jurisdiction in the Court of Federal Claims). The zone of interests arguments the Federal Circuit addressed in that case have thus been obviated by Congress's subsequent amendments of the Tucker Act. See id. at 1333.

Further, even if C.A.C.I. were applicable, it does not stand for the proposition Cleveland Assets advances, which is essentially that a plaintiff may bootstrap a pre-award bid protest onto any violation of any statute or regulation whose violation arguably has an impact on the procurement. The zone of interests analysis in C.A.C.I. relied on an earlier Court of Claims case, Keco Industries, Inc. v. United States, 492 F.2d 1200 (Ct. Cl. 1974). C.A.C.I., 719 F.2d at 1574. In that case, the Court of Claims recognized that "even a proven violation of some procurement regulation . . . will not necessarily make a good claim" because "[n]ot every regulation is established for the benefit of bidders as a class." Keco, 492 F.2d at 1206. Thus, in following the Supreme Court's guidance and applying the zone of interests test to Cleveland Assets's § 3307 claim, the Court upheld a principle embedded in binding bid protest jurisprudence.[2]

Finally, and in any event, in its Opinion and Order, the Court noted its doubts that Cleveland Assets's "allegations [we]re sufficient to establish the existence of a non-trivial competitive injury caused by GSA's claimed violation of § 3307" and its skepticism that Cleveland Assets had stated a claim for relief with respect to that claimed violation. Opinion and Order Denying MJAR at 11, 14 n.13. Accordingly, the Court concludes that Cleveland Assets has failed to demonstrate a substantial case on the merits with respect to the second prong of its appeal.

As to the other factors: one of Cleveland Assets's claimed grounds for irreparable harm—"the denial of a fair opportunity to participate in a lawful procurement process," Pl.'s Mot. at 11—is bound up in its chance of success on the merits, which, as described above, is not substantial. The other—that Cleveland Assets may "lose[] potential work and profits from a government solicitation," id.—is entirely speculative, as the government may well decide to award the lease to Cleveland Assets. Thus, Cleveland Assets has not shown (as it must) that it is "likely" to suffer irreparable harm absent an injunction. See Winter, 555 U.S. at 22 (emphasis omitted).

By contrast, if the government is enjoined from conducting the procurement, it will have little choice but to continue renting its current building from Cleveland Assets at penalty rates. Further, the Court gives some weight to the government's contention that "lease procurements are particularly susceptible to attrition" because property owners are unlikely to indefinitely hold their properties open on the chance that they might eventually lease them to the government. See Def.'s Resp. to Pl.'s Mot. at 14, ECF No. 44 (alteration and quotation omitted). And should one or more of the other offerors drop out, the government (and the public) will be denied the

---

[2] To the extent the analysis of 40 U.S.C. § 3307 in Springfield Parcel C, LLC v. United States, 124 Fed. Cl. 163 (2015) is to the contrary, the Court respectfully disagrees with the holding in that case.

benefits of robust competition. Thus, both the possible harm to the government and the public interest weigh against enjoining the government from proceeding.

In sum, none of the factors weigh in favor of issuing the injunction Cleveland Assets requests. Accordingly, Cleveland Assets's motion for a stay pending appeal must be **DENIED**.

## CONCLUSION

For the reasons set forth above, Cleveland Assets' motion to stay pending appeal is **DENIED**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge