# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

### OPINION FILED AND JUDGMENT ENTERED: 03/05/2018

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

17-2113 - Cleveland Assets, LLC v. US
United States Court of Federal Claims, Case No. 1:17-cv-00277-EDK

# United States Court of Appeals for the Federal Circuit

———————————

**CLEVELAND ASSETS, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2017-2113

———————————

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00277-EDK, Judge Elaine Kaplan.

———————————

Decided: March 5, 2018

———————————

STEVEN D. GORDON, Holland & Knight, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by MARY BETH BOSCO, GORDON GRIFFIN, ROBERT C. MACKICHAN, JR.; ELIZABETH JOCHUM, Tysons, VA.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DEBORAH A. BYNUM.

———————————

Before MOORE, HUGHES, and STOLL, *Circuit Judges*.

MOORE, *Circuit Judge*.

Cleveland Assets, LLC appeals the United States Court of Federal Claims' ("Claims Court") order dismissing its pre-award bid protest claim and granting the government's motion for judgment on the administrative record that General Services Administration's choice of maximum rental rate in its acquisition was not arbitrary or capricious or lacking a rational basis. For the reasons discussed below, we affirm.

## BACKGROUND

The Federal Bureau of Investigation ("FBI") is currently the sole tenant in a building in Cleveland, Ohio, pursuant to a lease between Cleveland Assets and the General Services Administration ("GSA"). The current lease began on February 1, 2002, and was originally set to expire on January 31, 2012. Due to delays in securing a new lease, the existing lease with Cleveland Assets has been extended multiple times. Pursuant to the terms of the extensions, GSA has paid, and continues to pay, Cleveland Assets a penalty rate of $44.72 per rentable square foot ("PSF") since the expiration of the original 10-year period.

In accordance with 40 U.S.C. § 3307, GSA must seek the approval of the Senate Committee on Environment and Public Works and the House Committee on Transportation and Infrastructure before obligating funds on a lease exceeding an amount published at GSA's Annual Prospectus Threshold. GSA Annual Prospectus Thresholds, http://www.gsa.gov/annualprospectusthreshold. To secure consideration for approval by the congressional committees, GSA must send the congressional committees a prospectus of the proposed facility, including a brief description of the space and "an estimate of the maximum cost to the Government." 40 U.S.C. § 3307(b).

In 2009, GSA began preparing a congressional prospectus for a new lease for the Cleveland FBI office. A series of documents demonstrate GSA considered a range of rental values for inclusion in its prospectus. A November 2009 appraisal report concluded that the total gross rent for the type of facility sought by the FBI ranged from $29.48 to $50.47 PSF. An unsigned, undated draft prospectus prepared before 2010 but not approved by GSA, along with a series of other undated and unsigned documents, estimated a maximum proposed rental rate of $42.00 PSF. An undated document titled "Lease Project Data Sheet - FY 2010 Program" projected a maximum rental rate of $50.47 PSF. And a document titled "Analysis of Replacement Lease Rental Rate" set forth an estimated rental rate of $26.00 PSF.

On December 21, 2010, GSA approved a prospectus with a maximum proposed rental rate of $26.00 PSF and an escalation clause for inflation.[1] By the end of September 2011, both the United States Senate Committee on Environment and Public Works and the United States House of Representatives Committee on Transportation and Infrastructure adopted resolutions approving the prospectus at the $26.00 PSF rate.

On March 10, 2016, GSA issued a request for expressions of interest in leasing a building for the FBI's Cleveland office. GSA directly invited a subset of the responses received, including Cleveland Assets, to submit proposals to the subsequent Request for Lease Proposals No. 6OH0241 ("RLP"), which was posted on December 7, 2016. The RLP stated that, in accordance with 40 U.S.C.

---

[1]  For ease of reference, we adopt the parties' convention of referring to the maximum rental rate of $26.00 PSF, acknowledging it has since escalated for inflation.

§ 3307, GSA would "only award a lease pursuant to this RLP if the offered rental rate d[id] not exceed the Congressionally-imposed rent limitation" of $26.00 PSF. J.A. 1070. The RLP also indicated that negotiations may be conducted, and "GSA will negotiate the rental price for the initial term, any renewal periods, and any other aspect of the offer as deemed necessary." J.A. 1075. It indicated any offeror "will be provided a reasonable opportunity to submit revisions to their initial offer including any cost or price, technical, or other revisions that may result from the negotiations." *Id.* The RLP stated the lease "will be awarded to the responsible Offeror whose offer will be most advantageous to the Government," considering a combination of factors including technical quality, site characteristics, and the offeror's qualifications and past performance. *Id.* For a proposal to be considered responsive, the RLP stated it must include a proposed rental rate "under the prospectus threshold." J.A. 1077.

On February 28, 2017, the last day proposals under the RLP could be submitted, Cleveland Assets filed the suit underlying this appeal in the Claims Court. Relevant to this appeal, Count II of Cleveland Assets' complaint asserted that the RLP is unlawful because it exceeds the scope of GSA's authority to solicit offers under 40 U.S.C. § 3307. In Counts III and IV of its complaint, Cleveland Assets alleged that the rental cap of $26.00 PSF is unreasonably low, imposes an undue restriction on competition, and shifts all risk to the contractor, thereby negating the technical factors.

The Claims Court dismissed Count II. The court noted that "[i]t is unclear" whether Cleveland Assets' allegations were sufficient to establish its status as an "interested party" for the purposes of 28 U.S.C. § 1491(b), but "even assuming that such an injury has been alleged," it held Cleveland Assets failed to demonstrate that it was

within the zone of interests protected by 40 U.S.C. § 3307. *Cleveland Assets, LLC v. United States*, 132 Fed. Cl. 264, 275 (2017). The Claims Court also granted judgment on the administrative record in favor of the government on Counts III and IV because it determined that GSA did not abuse its discretion in selecting the $26.00 PSF rental cap.

Cleveland Assets timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the Claims Court's legal determinations de novo and its factual findings for clear error. *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015). We review the grant or denial of a judgment on the administrative record without deference. *Croman Corp. v. United States*, 724 F.3d 1357, 1363 (Fed. Cir. 2013).

Under the Tucker Act, the Claims Court has:

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).

Cleveland Assets argues it has standing because it is an "interested party" pursuant to 28 U.S.C. § 1491(b)(1) and *American Federation of Government Employees v. United States*, 258 F.3d 1294 (Fed. Cir. 2001). The government argues that Cleveland Assets does not fall within the zone of interests of 40 U.S.C. § 3307 because the purpose of that statute is to enable the legislative branch to manage its appropriations. The government also

argues the jurisdictional reach of § 1491(b)(1) excludes the type of challenge asserted by Cleveland Assets in Count II.

While the Claims Court dismissed Count II on prudential standing grounds, we need not reach that issue because the plain language of 28 U.S.C. § 1491(b)(1) expressly precludes Claims Court jurisdiction over Count II of the complaint. Section 1491(b)(1) only confers jurisdiction over challenges to statutes or regulations "in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). It is a canon of statutory construction to "give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (internal quotation marks and citation omitted). In accordance with that principle, we decline to read out the meaning of "procurement" from the text of § 1491(b)(1) regarding the statutes and regulations that an interested party may challenge.

We have previously interpreted § 1491(b) to extend only to actions in which "the government at least initiated a procurement, or initiated 'the process for determining a need' for acquisition." *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008). The phrase "procurement" therefore limits the types of government action that the Claims Court has jurisdiction to review under § 1491(b). *Id.*; *see also Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010) ("[R]elief under 1491(b)(1) is unavailable outside the procurement context."). If plaintiffs could allege any statutory or regulatory violation tangentially related to a government procurement, § 1491(b)(1) jurisdiction risks expanding far beyond the procurement context.

The only statute alleged to be violated by Cleveland Assets in Count II is 40 U.S.C. § 3307, an *appropriation*, not a procurement, statute. The plain text of § 3307 demonstrates that the statute is directed to "*appropria-*

*tions* [being] made only" pursuant to approval by the specified congressional committees. 40 U.S.C. § 3307(a) (emphasis added). While the word "procurement" is nowhere to be found in the statute, "appropriation" is used eight times.

The statutory structure confirms our plain language reading of the statute. The structure of 40 U.S.C. § 3307 directs GSA how to apply for an appropriation, but it says nothing of how GSA must run its procurement once the appropriation is made. For instance, the statute explains what material must be included in the "prospectus of a proposed project," § 3307(b), the extent to which the estimated maximum cost may be increased, § 3307(c), when approval of a project may be rescinded, § 3307(d), and limitations on leasing certain types of spaces, § 3307(g). Moreover, Chapter 33 of title 40, under which § 3307 exists, generally dictates requirements for GSA's construction, alteration, and lease of government buildings, such as ensuring compliance with building codes and zoning laws. *See, e.g.*, 40 U.S.C. § 3312. But none of the surrounding statutory sections dictate GSA's procurement procedures for any such construction, alteration, or lease.

If we were to read § 3307 as a procurement statute, every appropriations bill and rider would become a potential source of challenge for any interested party under 28 U.S.C. § 1491(b)(1). We therefore affirm the Claims Court's dismissal of Count II of Cleveland Assets' complaint.

We now turn to Cleveland Assets' challenge of the Claims Court's judgment on the administrative record of Counts III and IV in favor of the government. In a bid protest case, an agency's action must be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Palladian Partners*, 783 F.3d at 1252. The arbitrary and capricious standard of review is "highly deferential," and procurement officials "have a

great deal of discretion" in their decisions, particularly when, as here, "the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." *Croman*, 724 F.3d at 1363 (internal quotation marks omitted).

We see no evidence that in deciding to use a $26.00 PSF rental cap in the RLP, "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *Palladian Partners*, 783 F.3d at 1252 (internal quotation marks omitted). Cleveland Assets does not dispute that one pre-solicitation and pre-prospectus document supported the $26.00 PSF figure ultimately included in the prospectus and the RLP. "In the absence of clear evidence to the contrary," the presumption of regularity allows courts to presume that "public officers have properly discharged their official duties." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001). A pre-solicitation document supports the $26.00 PSF rental cap, thereby shifting the burden to Cleveland Assets to put forth evidence that the $26.00 PSF figure was based on improper procedure or lacked a rational basis. Cleveland Assets points to no such evidence on this record. The mere existence of other documents supporting selection of an alternate rental cap is not sufficient to show that the selection of a $26.00 PSF was arbitrary and capricious. Under our highly deferential standard of review, we affirm the Claims Court's grant of judgment on the administrative record with respect to Counts III and IV.

## CONCLUSION

For the foregoing reasons, we affirm the Claims Court's dismissal of Cleveland Assets' pre-award bid protest allegation in Count II. We also affirm the Claims Court's judgment with respect to Counts III and IV.

## AFFIRMED

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## *Questions and Answers*

### Petitions for Rehearing (Fed. Cir. R. 40)
### and
### Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)

---

*Q. When is a petition for rehearing appropriate?*

A. Petitions for panel rehearing are rarely successful because they most often fail to articulate sufficient grounds upon which to grant them. For example, a petition for panel rehearing should not be used to reargue issues already briefed and orally argued; if a party failed to persuade the court on an issue in the first instance, a petition for panel rehearing should not be used as an attempt to get a second "bite at the apple." This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36. Such dispositions are entered if the court determines the judgment of the trial court is based on findings that are not clearly erroneous, the evidence supporting the jury verdict is sufficient, the record supports the trial court's ruling, the decision of the administrative agency warrants affirmance under the appropriate standard of review, or the judgment or decision is without an error of law.

*Q. When is a petition for hearing or rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merit panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a suggestion for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow identifiable decisions of the U.S. Supreme Court or Federal Circuit precedential opinions or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for rehearing granted by merits panels or petitions for rehearing en banc accepted by the court?*

A. The data regarding petitions for rehearing since 1982 shows that merits panels granted some relief in only three percent of the more than 1900 petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions were accepted less frequently, in only 16 of more than 1100 requests. Historically, the court itself initiated en banc review in more than half (21 of 37) of the very few appeals decided en banc since 1982. This sua sponte, en banc review is a by-product of the court's practice of circulating every precedential panel decision to all the judges of the Federal Circuit before it is published. No count is kept of sua sponte, en banc polls that fail to carry enough judges, but one of the reasons that virtually all of the more than 1100 petitions made by the parties since 1982 have been declined is that the court itself has already implicitly approved the precedential opinions before they are filed by the merits panel.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals. As a matter of interest, very few petitions for certiorari from Federal Circuit decisions are granted. Since 1982, the U.S. Supreme Court has granted certiorari in only 31 appeals heard in the Federal Circuit. Almost 1000 petitions for certiorari have been filed in that period.

October 20, 2016

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## INFORMATION SHEET

## FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
**1 First Street, NE**
**Washington, DC 20543**
**(202) 479-3000**

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999